Merrimack, ⟩
June, 1895. ⟨

TOWNE *v.* THOMPSON.

A lessor is not liable to a tenant of the lessee for injuries resulting from the unsanitary condition of the premises, in the absence of fraudulent conceal-ment of the defects complained of, a warranty of fitness, or an agreement to repair.

CASE, for negligence. The declaration is as follows: " In a plea of the case for that the defendant, on, to wit, February 1, 1893, and for a long time previously, was the owner of a certain tene-ment house situated on South Spring street in said Concord, and on said February 1, 1893, leased one of the tenements in said house to one Addie Hardy, who was a boarding-house keeper and who intended to use said tenement for the keeping of board-ers, of which the said defendant had knowledge; that said Mrs. Hardy continued to occupy said premises and pay the rent there-for to said defendant until, to wit, May 1, 1893, and kept several boarders in said tenement, among whom was the plaintiff; that it was then and there the duty of said defendant to keep and maintain said tenement in a healthful and cleanly condition, to provide proper means for ventilating the rooms and basement of said tenement, and to provide suitable drains, sewers, and vaults, properly ventilated and constructed, for the use of said tenants and lodgers in said tenement; and the plaintiff avers that said Thompson did not maintain and keep said tenement in a health-ful and cleanly condition, and did not provide proper means for ventilating the rooms and basement of said tenement, and did not provide suitable drains, sewers, and vaults, properly venti-lated and constructed, for the use of said tenants and lodgers, but on the contrary, willfully, improperly, and negligently per-mitted refuse and decayed matter and water to remain in and around said tenement and in the basement thereof, and suffered and permitted said basement to remain in a filthy, unhealthful, and unventilated condition, and constructed and maintained in

said basement an unsuitable, improperly constructed vault and privy. And the plaintiff avers that not knowing the true condition of said tenement and basement set forth as aforesaid, he commenced boarding and lodging with Mrs. Hardy, in said tenement, on, to wit, February 1, 1893, and continued to live in said tenement until, to wit, April 22, 1893; that in consequence and as a direct result of the aforesaid filthy, improper, and unhealthful condition of said tenement and basement, he became sick and was attacked with a severe and dangerous disease, to wit, diphtheria, and was confined to his bed for a long time, and suffered great bodily and mental pain, and was obliged to expend large sums of money for nursing, medicine, and medical attendance, and was quarantined by the board of health of said city, and not permitted to leave said house for a long period of time; and the plaintiff further avers that said defendant prior to the illness of said plaintiff had been notified by the health officers of said city of Concord, of the condition of said tenement and basement, as hereinbefore set forth, and directed to put the same in suitable and proper condition; that said defendant paid no attention to said notice and permitted said premises to remain in the same condition until they occasioned the illness of the plaintiff set forth as aforesaid; to the damage of the plaintiff, as he says, the sum of one thousand dollars ($1,000)."

The plaintiff amended by filing the following additional count: " In a further plea of the case for that the defendant on the first day of February, 1893, and for a long time both before and after that day, was the owner and possessor of a certain tenement house, together with the appurtenances, situated at the corner of South Spring and Marshall streets, in said Concord, and in which said plaintiff from said February 1 to April 22, 1893, rightfully inhabited and dwelt; that said defendant, well knowing the premises, on said February 1, and for a long time both before and after said day, constructed and maintained upon said premises, faulty, insufficient, improper, and defective drains and sewers, a faulty, insufficient, improper, and defective privy, a faulty, insufficient, improper, unventilated, and defective cellar, and on said February 1, and for a long time both before and after said day, said defendant, well knowing the premises, unjustly suffered and permitted to be in and remain upon the said premises, faulty, insufficient, improper, and defective drains and sewers, a faulty, insufficient, improper, and defective privy, a faulty, insufficient, improper, unventilated, and defective cellar; and the defendant on said February 1, and for a long time both before and after said February 1, permitted said faulty, insufficient, improper, unventilated, and defective drains, sewers, privy, and cellar to be out of repair, and, although notified of their aforesaid condition, and agreeing to change, remedy, and repair the same, the

defendant, well knowing the premises, neglected to change, remedy, and repair the same, wherefore and by means thereof, on divers days and times between said February 1 and April 22, 1893, and while said premises were being used in a reasonable and ordinary manner and for the purposes for which they were let, large quantities of excrement, filth, stagnant and unwholesome water penetrated, issued, and flowed from out of said drains, sewers, and privy, into and upon the floor of said cellar in said tenement, and also, thereby did create divers noisome, noxious, offensive, and unwholesome smells, odors, vapors, gases, and stenches, during the time aforesaid in the tenement aforesaid, by means of all which the plaintiff, not knowing the true condition of the said tenement, became, on, to wit, April 6, 1893, sick with a dangerous disease, to wit, diphtheria, and was confined to his bed and house, and was thereby made to suffer great bodily and mental pain, and has suffered lasting and permanent injury to his health, and was put to great expense of money and loss of time in trying to effect a cure."

The defendant demurred.

*Sargent & Hollis* and *William H. Sawyer*, for the plaintiff.

*Leach & Stevens* and *Frank N. Parsons*, for the defendant.

WALLACE, J. The possession of leased premises is in the tenant. Persons who occupy by his permission, as his sub-tenants, servants, employees, or members of his family, do not occupy by permission of the landlord, and their rights in regard to injuries received from defects in the premises are governed by the same rules and are subject to the same limitations as the tenant's. *Bowe* v. *Hunking,* 135 Mass. 380, 383; *Jaffe* v. *Harteau,* 56 N. Y. 398; 1 Tay. L. & T., *s.* 175 a. The plaintiff was occupying the defendant's premises by the permission of the tenant and not by invitation of the landlord, and had the same rights against the landlord as the tenant,— those of a lessee against a lessor. The lessee takes an estate by purchase in the premises hired. The rule of *caveat emptor* applies the same as between buyer and seller. It rests with the lessee to make the necessary examination to determine whether the premises are safe and suitable for the purpose for which they are hired. There is no warranty implied in the ordinary contract of letting that the premises are reasonably safe or suitable for the uses intended, or that the landlord will keep the leased premises in repair; and in the absence of any warranty, or of deceit or fraud on the part of the landlord, the lessee takes the risk of the quality of the premises, and cannot make the landlord answerable for any injuries sustained by him during his occupancy by reason of the defec-

tive condition of the premises, or even of their faulty construction. *Scott* v. *Simons*, 54 N. H. 426; *Robbins* v. *Jones*, 15 C. B. N. S. 221; *Bowe* v. *Hunking, supra; Cowen* v. *Sunderland,* 145 Mass. 363; *McKeon* v. *Cutter,* 156 Mass. 296; *Bertie* v. *Flagg,* 161 Mass. 504; 1 Tay. L. & T., *s.* 175 a; Buswell Pers. Inj., *s.* 82.

If the defendant, by concealing a defect known to him, had induced Mrs. Hardy to become his tenant, and she or her property had been injured by his deceit, without fault on her part, there would have been a question which the case does not present. No misrepresentation, concealment, or wrongful failure to disclose a defect, is alleged in the declaration, and is therefore not a matter to be considered on demurrer. A·large part of the plaintiff's argument relates to an asserted duty of a landlord to disclose hidden defects. The declaration does not allege such a duty or a breach of it. The plaintiff does not rely upon a warranty that the tenement was fit for use and occupation as a residence, and he admits that the defendant had not made any contract to keep the premises in a condition suitable for that use. He does not contest the two points settled in *Scott* v. *Simons,* that there was no implied warranty of fitness for occupation, and no implied contract to keep the premises in repair; and he does not allege in pleading or contend in argument that there was any express contract on either point.

It is not alleged that the defendant carried filth to the premises after they were let to Mrs. Hardy. The charge is one of omission. In the first count it is alleged that it was the defendant's duty to keep the tenement in a healthful and cleanly condition, and that he did not perform this duty. The relation between him and his tenant was one of contract. No contract is alleged binding him to keep the tenement in a healthful and cleanly condition; and the plaintiff, being on the premises as a boarder under a contract with the tenant, had no greater rights as against the defendant than Mrs. Hardy had. So long as he violated no contract and did not invade the premises, he was no more liable to his tenant, or the boarders residing there in the exercise of contractual rights acquired from the tenant, for an uninhabitable condition of the premises, than he would have been for not covering the house if the roof had been removed by whirlwind or fire. He was not bound to keep the house in a habitable condition because his contract with his tenant did not require him to do it; and his obligations to persons residing there under contracts with his tenant were no greater than his obligations to his tenant under whom they acquired their rights of residence. So far as his alleged omission is concerned, the case is as if Mrs. Hardy had been grantee of the fee instead of grantee of a term.

If he were responsible for a nuisance on his premises that injured the occupants of adjoining land owned by A, it would be because he invaded the territory of A with noxious air, as he would be liable for invading it with cattle or a hostile force of men. When the plaintiff went to live on the defendant's territory under a contract with the defendant's tenant, he accepted the contractual rights acquired by the tenant; and those rights did not include a right to have the premises kept in a condition suitable for residence.

What is said in *Scott* v. *Simons* about a landlord's liability for faulty construction was evidently intended to be a mere repetition of the doctrine of *Alston* v. *Grant*, 3 E. & B. 128, and is based upon a misunderstanding or misapplication of that case. Grant, having a reservoir, constructed a sewer which carried off the water from the reservoir under a street near two of his houses. Subsequently he let the houses to Alston, and continued to use the sewer as before. It does not appear that the sewer was on the premises leased to Alston. Whether it was or was not seems not to be material, as Grant retained the use, control, and management of the sewer for his purpose of carrying off the water from his reservoir, which apparently was not on the leased premises and evidently was not leased to Alston. By reason of the unskillful construction of the sewer, water escaped from it into the cellars of the houses. The plaintiff's argument put his claim on the ground that he had the same right of action that he would have had if he had been the owner of the fee, and not on the relation of landlord and tenant. He did not claim that he was tenant of the sewer, but relied wholly on the rights of adjacent owners and the obligation of A not to make an unreasonable use of his own land that would be injurious to the owners of adjoining lands. The case was argued and decided on that ground, and it has no bearing on a case of landlord and tenant, like *Scott* v. *Simons*, in which there is no unreasonable use of adjoining land and no use made of leased premises by the landlord, and in which the rights of the tenant and those claiming under him are necessarily created by the contract of letting and hiring between the landlord and the tenant.

What is said in *Scott* v. *Simons* about a landlord's liability for suffering a drain to remain defective after notice that it had become so, is a contradiction of the decision in the same case that he is not bound to keep the leased premises in repair, and is based on a misapplication of *Church* v. *Buchhart*, 3 Hill 193, in which the wall of a building that had been destroyed by fire was blown over upon a traveler in the street. For the purpose of that case, the traveler had the rights of an owner of adjoining land. The owner of the wall was negligent in allowing the wall to stand in a dangerous condition. He was liable as he would

have been if, in rebuilding the wall, he had carelessly dropped a brick or stone on an adjoining owner properly standing or moving on his own soil. He was liable for an unreasonable use of his own land causing an injury to one exercising a right of an owner of adjoining land. This liability seems to have been inadvertently taken in *Scott* v. *Simons* as a liability of a landlord to keep leased premises in repair. It is expressly said that he would be liable for not repairing a drain, although it is expressly held in the same case that when he is not bound by express contract to keep leased premises in repair, no such contract is implied by law. Whether the grant is of the fee, or of a term of years or days, the rights of the grantee and those claiming under him may be those of adjoining owners, if the grantor owns adjoining land; but the rights of the grantee and those claiming under him in the granted premises are derived from the grant, and if the grant does not require the grantor to change the structure of buildings or drains on the granted premises, or repair them, he is under no obligation to the grantee so to do. In *Church* v. *Buckhart*, if the owner of the dangerous wall had leased the lot, with the dangerous wall upon it, to the traveler upon whom it fell, and the wall had fallen upon the lessee while at work on the lot cultivating it as a garden, the lessor would not have been liable, unless for deceit in not disclosing a hidden defect or on some other ground not presented by this case; although he would be liable for damage done an adjoining lot by the fall of the wall, if his allowing the wall to stand in a dangerous condition was an unreasonable use of his land, as the nuisance caused by a defective drain might be if it invaded the adjoining lot with poisonous exhalations. On the question of liability, it might not be material whether the invasion were of bricks or of polluted atmosphere. A tenant would assume the risks of a dangerous condition of the leased premises, unless there were deceit, special rights created by express contract, or some cause of action that does not appear in this case. Aside from the errors of *Scott* v. *Simons*, the plaintiff's chief contention is that a tenant, or a person claiming under him and having his rights, also has, against the landlord, the rights of an adjoining owner,— a doctrine that we are unable to adopt.

*Demurrer sustained.*

Parsons, J., did not sit: the others concurred.