Strafford,
Feb. 4, 1930.

J. E. TARBELL CO. *v.* FRANK E. GRIMES, *& a.*

*Conrad E. Snow, Thornton L. Lorimer* and *H. A. & R. E. Shute* (*Mr. Snow* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendants.

BRANCH, J. Counsel for the defendants stated at the trial that the statute of frauds was the basis of their motions for a nonsuit and a directed verdict. More specifically their claim seems to have been that the plaintiff failed to prove a "note or memorandum in writing of the contract or sale . . . signed by the party to be charged or his agent in that behalf." P. L., *c.* 166, *s.* 4. *subd.* 1. It was conceded at the oral argument that a telegram may constitute a sufficient memorandum to satisfy the statute of frauds, and this is undoubtedly the law. See note to *Brewer* v. *Company* (127 Cal. 643) in 50 L. R. A. 240, where many authorities are collected.

No claim is made that the telegram of October 31 does not adequately set forth the terms of the contract. The only fault which the defendants find with it as a memorandum under the statute is that it does not show on its face that the brokers signed as agents for the purchaser. This objection has no basis either in fact or in law. From the language of the message, it might properly be inferred that the brokers signed as agents of the defendants. The statement that the potatoes had been sold to F. E. Grimes & Son, Dover, coupled with the reference to the preceding telephone conversation and the direction to draw a draft on them at Dover and forward to a Dover bank, would clearly justify the inference that the brokers, in sending the telegram, were acting for the defendants. But even if the fact of agency did not appear upon the face of the document, it would not, for that reason, be insufficient. The law of this state does not require that a memorandum under the statute shall show that the signer acted as agent for the party sought to be charged. If the signer acted in fact as agent for an undisclosed principal, this may be

shown by parol evidence and the principal will be bound by the contract. *Usher* v. *Daniels*, 73 N. H. 206, and cases cited; *Kingsley* v. *Siebrecht*, 92 Me. 23. The telegram in this case clearly satisfies the requirements of the statute of frauds.

The defendants further contend, however, that even if there was a sufficient memorandum of the contract, the plaintiff's case must fail because "there is no evidence to prove any authority on the part of Adams to represent defendant." It is true, as pointed out in *Green* v. *McCormack*, 83 N. H. 509, that a broker's memorandum "does not prove the authority of the broker to execute it," but a complete answer to the defendants' contention is found in another rule of law set forth in that case as follows: "At the outset the broker is the agent of the party who first employed him, but he becomes the agent of the other also, when the latter instructs him to close the bargain, . . . When so authorized he has, like other agents, implied authority to do whatever is necessary and proper to carry his authority into effect, including herein the signing of the necessary memorandum. 1 Mechem, Sales s. 464." It was a proper conclusion from the evidence, that the defendants dealt with Adams as a broker and instructed him to close a bargain for a carload of potatoes at a price of $4.70 per hundred weight. They thus conferred upon him implied authority to sign the necessary memorandum in their behalf.

It is unnecessary, however, in this case, to invoke any theory of implied authority, for the evidence would amply justify a finding that the defendants gave Adams actual authority to sign the telegram in question. If the jury found, in accordance with the plaintiff's evidence, that Lawrence Grimes sat at the elbow of Mr. Adams while he was telephoning to Mr. Tarbell and understood that the plaintiff had given him a firm price of $4.70 per hundred weight, good for that day, that he subsequently notified Adams that he would take the car at that price, and was told by Adams that he would telegraph to Tarbell, then a finding that Adams had express authority to send a telegram to close the bargain would be not only permissible but obligatory. If the above facts were established, the subsequent issuance of an unsigned confirmation by the brokers bearing on its back a statement that they acted only as selling agents for the owner or shipper, would not alter the situation; and a jury might properly regard as mere equivocation the formal denials of Mr. Grimes upon the witness stand that he ever authorized the sending of the telegram to Mr. Tarbell or that he ever authorized the Federated Fruit & Vegetable Growers, Inc. to act as his agent.

The defendants also argue that the contract of sale was never completed because no written confirmation of the transaction by the seller was received by them on the day their order was given. They assert that "the uncontradicted evidence was that the custom of the trade demanded that where an oral bid was made it was good for that business day only, and in order to complete the transaction it was necessary that the bid be accepted *that day* and *written* confirmation of the sale received from the seller the same day the bid was made, otherwise the sale was incomplete and the transaction was off."

Since the record states that the basis of defendants' motions for a nonsuit and a directed verdict was the statute of frauds, it is doubtful if they are entitled to raise this question now, but we do not care to dispose of it upon this ground. It is sufficient to say that an examination of the record shows that the evidence as to the existence, scope and effect of the trade custom in regard to confirmations was conflicting. The questions of the existence of a custom such as the defendants describe and its effect under the circumstances disclosed by the evidence, were submitted to the jury under instructions which were favorable enough to the defendants, and the verdict determined these issues adversely to them.

Defendants' other exceptions, which have not been argued, appear to be without merit, and are overruled.

*Judgment on the verdict.*

Snow, J., did not sit: the others concurred.