Hillsborough, }
Nov. 7, 1933. }

CATHERINE HUNKINS *v.* AMOSKEAG MANUFACTURING CO.

*Sullivan & Sullivan (Mr. Frederic Parker* orally), for the plaintiff.

*Wyman, Starr, Booth & Wadleigh (Mr. Booth* orally), for the defendant.

MARBLE, J. It is "the well-settled rule that a landlord is under no legal duty to repair the leased premises" (*Gobrecht* v. *Beckwith*, 82 N. H. 415, 417, and cases cited), provided, of course, he is not so obligated by the express terms of the tenancy. But even then, a breach of his obligation does not render him liable in an action of tort for negligence. *Dustin* v. *Curtis*, 74 N. H. 266; *Petroski* v. *Mulvanity*, 78 N. H. 252.

The rule is otherwise, however, if the landlord, being under no contractual duty to repair the demised premises, chooses nevertheless to undertake that work. "The person voluntarily and gratuitously making repairs upon another's premises, whether as landlord or in any other capacity, whether the premises are occupied by his tenant or by an owner, is . . . bound to take reasonable care therein, so that his act may not endanger those whom he should expect to use the premises and if he creates a danger and that danger results in injury, he is liable therefor." Bohlen, "Landlord and Tenant," 35 Harv. Law, Rev. 633, 651. See, also, *Rowan* v. *Company*, 79 N. H. 409, 410; 36 C. J. 218.

It is also a well-established principle of law that "A possessor of land, who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land in the right of the lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved therein, and (b) could have made the condition safe." Restatement, Torts (Tent. Draft No. 4), s. 231. See, also, *Knowles* v. *Company*, 77 N. H. 268.

There is no evidence concerning the terms of Mrs. Waite's tenancy. It does not appear whether she occupied the premises under a written lease or an oral contract of letting. The plaintiff bases her right to recover squarely on the proposition that the division of the building into apartments and its occupancy by different tenants, coupled with the conduct of the defendant in making repairs, constituted evidence on which a jury might properly find that the defendant retained exclusive control of the roof.

At the same time, she contends that there was sufficient evidence to justify a verdict in her favor on the first as well as the second of the theories of liability outlined above.

It could be found that the defendant, two weeks before the accident, sent employees to repair the roof on notice from Mrs. Waite that repairs were needed. Neither Mrs. Waite nor the workmen testified. The extent of the work done and the manner of its performance are left wholly to conjecture. Nor is there any evidence that the leak which caused the plaintiff's injury was the same leak which the workmen were asked to repair. The necessary connection between the injury and the negligence charged is therefore wholly lacking. *Watkins* v. *Hustis*, 79 N. H. 285; *Rowan* v. *Company*, 79 N. H. 409, 411.

Moreover, the theory of an assumed undertaking is entirely inconsistent with the plaintiff's claim that "control of the roof was actually lodged in the landlord." Plaintiff's counsel suggest in their brief that if the presiding justice had difficulty in finding "specific evidence" that the repairs which the defendant voluntarily undertook to make were "negligently made," he should, "in view of the fact that control and the only right of access was in the defendant," have applied the rule of *res ipsa loquitur*. The voluntary assumption of repairs by a landlord presupposes the tenant's control of the premises repaired. The landlord is under a legal duty with respect to the management of those portions of the property which he retains in his own control whether he undertakes the performance of that duty or not.

There was evidence that the defendant's employees not only repaired the roof "a number of times" before the accident but put on a "new roof" of tar and gravel after the accident. Retention of control by the defendant could properly be inferred from these facts.

" . . . when the defendant's liability depends upon whether a landlord or his tenant was in *control of premises*, . . . the acts of control of such a person are provable, and an act of repair done after the injury may chance to be such an act." 1 Wig. Ev. (2d *ed.*), s. 283, *p.* 582. See, also, *Bixby* v. *Thurber*, 80 N. H. 411, 417; *Rowe* v. *Company*, *ante*, 127, 130, 131.

There was ample evidence that the defendant knew or ought to have known of the unsafe condition of the roof which caused the accident and the risk involved therein and could have made the condition safe.

The fact that the tenant at one time installed a radio aerial on the roof did not establish the tenant's control of the roof as a matter of law.

Evidence of unauthorized admissions made by the workmen who repaired the roof was properly excluded. *Nebonne* v. *Railroad*, 67 N. H. 531; *Wright* v. *Railroad*, 81 N. H. 361.

The plaintiff testified, subject to the defendant's exception, that she called the defendant's repair department on the day of the accident and that she did so because she had heard Mrs. Waite call that department on previous occasions. A witness also testified that two weeks before the accident, when certain roomers complained to Mrs. Waite that water was coming through the roof, he "heard her telephone." The witness was asked, "Could you tell from the conversation on Mrs. Waite's end of the telephone whom she called?" His answer, "I don't know who she called; I know it was the Amoskeag," was excluded subject to the plaintiff's exception.

It is true that the testimony covered by these exceptions was in a strict sense hearsay evidence, yet modern business methods necessitate some modification of ancient rules. *St. Louis* v. *Railroad,* 83 N. H. 538, 540.

Where a person calls a telephone number and obviously gets it, there can be no valid objection to permitting a bystander to testify to that fact. And this, in substance, is all the excluded testimony comes to. To hold that the witness before testifying to what he heard must have personal knowledge of the identity of the person at the other end of the line would lead "to unpractical quibbles." 1 Wig., Ev. (2d *ed.*), s. 669. See, also, *Tarbell* v. *Grimes,* 84 N. H. 219, 223. This does not mean of course that a bystander may testify to statements that are themselves inadmissible; such, for example, as admissions which an agent is not authorized to make. Cases on the subject are collected in 71 A. L. R. 56.

The case should have been submitted to the jury on the issue of control.

*New trial.*

All concurred.