Hillsborough, } No. 3216.
Feb. 4, 1941. }

## MARY BUSICK *v.* HOME OWNERS LOAN CORPORATION.

*Sheehan & Phinney* (*Mr. Phinney* orally), for the plaintiff.

*Samuel J. Dearborn* and *Devine & Tobin* (*Mr. Tobin* orally), for the defendant.

ALLEN, C. J. It is "the well-settled rule that a landlord is under no legal duty to repair the leased premises" (*Gobrecht* v. *Beckwith*, 82 N. H. 415, 417, and cases cited), provided, of course, he is not so obligated by the express terms of the tenancy. But even then, a breach of his obligation does not render him liable in an action of tort for his negligence. *Dustin* v. *Curtis*, 74 N. H. 266; *Petroski* v. *Mulvanity*, 78 N. H. 252.

"The rule is otherwise, however, if the landlord, being under no contractual duty to repair the demised premises, chooses nevertheless to undertake that work . . . " *Hunkins* v. *Company*, 86 N. H. 356, 357. " . . . where the only relation between the parties is contractual, the liability of one to the other in an action of tort for negligence must be based upon some positive duty which the law imposes because of the relationship, or because of the negligent manner in which some act which the contract provides for is done; and . . . the mere violation of a contract, where there is no general duty, is not the basis of such an action. . . . In fact, it is generally held that a tenant, a member of his family, or his guest, cannot sue a landlord in tort for personal injuries due to his omission to repair premises which have passed into the possession and control of the tenant, even if the landlord has agreed to make repairs." *Dustin* v. *Curtis*, 74 N. H. 266, 269.

The promise to repair here is no evidence of retention of control. If it were, it would so heavily militate against the rule that the promise creates no more than contractual liability as virtually to defeat it. Nor is performance of the promise in specific instances, coupled with the promise, any more helpful to show retention. The promise with or without performance, if not void of relevancy on the issue, has only conjectural value in indicating that the tenant does not have full possession and control. "There being no evidence . . . that

either the repairs made by the landlord or his promise to repair were motivated by a recognition on his part of a duty owed to the tenant in that respect rather than by a desire to preserve his investment, . . . there is no evidence of a retention of control by the landlord . . . " *Folsom* v. *Goodwin*, 90 N. H. 467, 470.

Here the agent's authority was to rent and keep the property "in rentable condition." The authority is insufficient as evidence to warrant the conclusion that maintenance indicated retained control in the absence of agreement or circumstances giving it such a feature.

In respect to the count for breach of contract, the claim is that even if the defendant owed no duty of care to the plaintiff, its disregard of its promise to repair caused her fall and resulting damages. If the promise to repair contemplated personal injuries as a consequence of its breach, it amounted to a promise to furnish personal safety by making the repairs. To say that the defendant owed no duty of care to protect the plaintiff's personal safety but owed her the duty arising from contractual obligation to protect her, may seem a refinement of distinction, but narrow differences are at times determinative of rights and liabilities. The promise to repair is not an insurance or guaranty of personal safety, but when personal safety is a purpose of the repairs promised, it may fairly be said that the promise contemplates that personal safety depends upon its observance. The rule that damages for breach of contract are the consequences of the breach which are in fact or should be contemplated by the parties when the contract is entered into (*Davis* v. *Company*, 77 N. H. 403, 404) is applicable. What damages within legal allowance result from the fact of a breach of the contract, and not from the character of the breach, is the inquiry.

Authority on the subject is in conflict, but this view is sustained by local precedent. In the cases of *Dustin* v. *Curtis*, 74 N. H. 266, and *Petroski* v. *Mulvanity*, 78 N. H. 252, the actions "sounded in tort," and the cases announced the rule that such actions cannot be maintained for a negligent failure to perform a contract. In *Barrett* v. *Company*, 80 N. H. 354, the rule was recognized and applied. But the opinion discusses at length the question of liability for the consequences of a breach of a contract, whether or not the breach is a negligent one, and definitely distinguishes the case from one where "special circumstances" charge the defendant "with knowledge of facts from which the likelihood of special damage should be inferred" (*Ib.* 360). It may be inquired why it was not suggested in the *Dustin* and *Petroski* cases that the declarations might be amended by a

count for breach of contract, but if a conclusion that the amendment could not be made, might be drawn, it would be of no avail in view of the distinction adopted subsequently in the *Barrett* case. In *Stone* v. *Johnson*, 90 N. H. 311, the distinction set forth in the *Barrett* case was impliedly recognized through reference to the case between the same parties reported in 89 N. H. 329, the court there (*p.* 331) saying that the promise to repair was not relied upon by the plaintiff as a condition of her services.

If the weight of authority denies recovery on the basis of contractual as well as tortious liability, it would seem to be because of the special features of the relations between landlord and tenant, leading to an exception to the general rule for the allowance for consequential damages for a breach of contract. It is not thought that the special features have sufficient importance to require the adoption of the exception.

But contemplated consequences of the landlord's breach do not include consequences avoidable by the tenant. " . . . damages for injury to the tenant or his property from continued failure to make repairs cannot ordinarily be recovered because under the rule of avoidable consequences the tenant should have made the *repairs* himself and recovered their cost from the landlord." Williston, Cont., (1st *ed.*), *s.* 1404.

Examination of the evidence shows that the consequences were avoidable by the tenant and that it could not be found reasonable for him not to have the steps repaired.

The tenancy commenced in May 1938 and the plaintiff's fall was in October. She testified that she complained to the defendant's agent of the condition of the steps, telling him that she was afraid of them. The first complaint was prior to July, and was renewed in July and each month thereafter. On each occasion a promise to repair was made. The repair of the steps was a simple and inexpensive matter. There were only two and they were of wooden construction. The time, labor and materials required for repairing them were inextensive. It was clearly apparent for at least a month before the plaintiff fell that the defendant's agent was indifferent to his promise and could not be relied upon to make the repairs. The only fair inference was that he was putting the tenant off, either intending not to make the repairs in any event or not to do so until it suited him. The plaintiff testified that the steps were rotten and shaky and that she fully appreciated the danger of using them. She had no rights against the defendant except such as arose from privity with

the tenant. He was aware of the condition of the steps from the time the tenancy commenced and the plaintiff was pregnant when she fell. The tenant, although her husband, took no care to remedy a dangerous situation after it was apparent that it was uncertain whether or when the defendant would do so. Under the admitted facts his neglect to take action was unreasonable as matter of law, and precludes the plaintiff from recovery.

*Exception overruled.*

BRANCH, J., dissented on the issue of tort liability: the others concurred.