Rockingham,
Jan. 6, 1953. } No. 4165.

MURIEL B. BLACK *v.* ROSARIO J. FIANDACA & *a.*

*John DeCourcy* and *Thomas E. Flynn, Jr.* (*Mr. DeCourcy* orally), for the plaintiff.

*Thomas J. Morris* and *Charles J. Griffin* (*Mr. Morris* orally), for the defendants.

DUNCAN, J. The plaintiff's rights with respect to injuries resulting from defects in the defendants' premises are governed by the same rules, and subject to the same limitations, as the rights of the defendants' tenants. *Folsom* v. *Goodwin*, 90 N. H. 467. See *St. Cyr* v. *Johnson*, 92 N. H. 197; *Rowe* v. *Company*, 86 N. H. 127. The decisive issue was one of fact, as to whether the attic was

within the control of the defendants, or of their tenants. See anno. 25 A. L. R. (2d) 364, 368. If it was kept in the control of the defendants for the common benefit of occupants of the house, the defendants were under a duty to exercise ordinary or reasonable care to keep the premises in a reasonably safe condition for any use which might be found to be contemplated. *Ayers v. Gordon*, 94 N. H. 30; *Papakalos v. Shaka*, 91 N. H. 265; *Menard v. Cashman*, 94 N. H. 428, 430; *Monier v. Belzil*, 97 N. H. 176; Restatement, Torts, s. 360.

If the tenants' use of the attic was pursuant to oral license only, granted primarily for their own convenience (anno. 58 A. L. R. 1433, 1436; 32 Am. Jur. 560), the defendants' duty was to exercise care to remedy any hidden defects of which they knew, or to give warning of them. *Cook v. Company*, 95 N. H. 397; *Mitchell v. Legarsky*, 95 N. H. 214; Restatement, Torts, *s.* 342. If the tenants were entitled to use the attic as an appurtenance to the leased apartment furnished for common use, there was an added duty to exercise care to discover such defects and to make them safe. *Hunkins v. Company*, 86 N. H. 356; *Ayers v. Gordon, supra;* Restatement, Torts, *s.* 360, *supra, comment* e.

On the other hand, if control was exclusively in the tenants the defendants had only a limited duty not to deceive the tenants as to dangers incident to their use of which the defendants knew and the tenants did not. *Cate v. Blodgett*, 70 N. H. 316; *Clark v. Sharpe*, 76 N. H. 446; *Marston v. Andler*, 80 N. H. 564. See *Gobrecht v. Beckwith*, 82 N. H. 415, 418; *Kambour v. Railroad*, 77 N. H. 33, 46.

On the issue of control no express finding or ruling was made. It was found that the tenants' apartment consisted of various rooms on the second floor, and that the defendants "permitted the tenants . . . to store goods in said attic." It was undisputed that no reference was made to use of the attic in conversations which led to the letting. The original lease, which was oral, related solely to the second floor. The testimony of one of the tenants that arrangements for their use of the attic were made after the letting, when the tenants were moving in, was neither confirmed nor denied by the defendants. Conceivably such an arrangement might be thought to constitute either a modification of the original lease so as to include the attic, or an oral license to use a part of the premises which continued in the landlords' control.

The defendants argue that on this record control must be taken

to have been in the tenants, because access to the attic was through the kitchen closet in their apartment, over a ladder or set of portable stairs; and because the Court ruled that there was "no evidence that the ladder was used in common with other tenants or that the landlord retained control thereof." We do not regard these circumstances as conclusive. If the defendants gave the tenants the right to use the ladder in common with themselves, their obligations would be no different from those which would arise with respect to any part of the building furnished for the tenants' use with other tenants. *Brandt* v. *Rakauskas*, 112 Conn. 69, 72.

The ruling that there was no evidence that the landlords retained control of the ladder might be questioned, in view of the evidence that the defendants undertook to tell the tenants where to store the ladder at the first of their tenancy, and directed them not to use it until the loose flooring across the attic joists had been "arranged." But assuming that the ruling was properly made, a failure to prove control of the ladder did not require a finding that there was no control of the attic. The ladder was clearly within premises controlled by the tenants, while the attic was not. If it were established that the defendants retained control of the attic, their control could be found to carry with it by implication a right of access by the only convenient available means, even though not amounting to control of the means. Control of the attic would not necessarily require control of the ladder, simply because a right to use it existed. *Martel* v. *Malone*, 138 Conn. 385, 392.

Similarly, the fact that the landlords on occasion sought permission from the tenants to pass through their apartment does not conclusively establish that control of the attic was in the tenants. Such conduct would be equally consistent with an attempt on the part of the landlords to avoid inconvenience to the tenants by a courteous exercise of a right of access. Moreover, there was evidence that upon at least one occasion when the tenants' permission was not readily available, the attic was entered through the apartment without permission.

A finding that control of the attic was in the tenants was not implicit in the findings and rulings made; and as previously indicated, no express finding or ruling was made as to who did have control.

The ruling that "there was no evidence that the defendants used the attic," to which the plaintiff excepted, is not supported by the

record. One of the tenants testified that permission was given by the landlords "to use the attic for storage with them, that they would want to go through to get at their stuff occasionally," and that "they had things up there and we had things up there." In describing the attic, he testified that, "from here over was piled up with somebody's else goods." Relating a conversation with one of the defendants, he testified that the latter said: "You can have the . . . use of the attic to store some of your things . . . and we will be using it ourselves and we will expect you to allow us to come through there to have access to our goods." This testimony was not contradicted, but was partially confirmed by the defendants' evidence. One defendant testified that he took "old books . . . old shoes and stuff that was useless" to the attic after the defendants moved in. His sister, the other defendant, testified that workmen who erected an aerial for them were admitted to the attic without permission from the tenants, because they were absent at the time.

Thus it appears that the ruling to which exception was taken was clearly erroneous, and must be set aside. The question remains whether the error was prejudicial and such as to vitiate the verdict. In our opinion it was. The evidence of the defendants' use of the attic tended to show a right to use it and hence a retention of control of it. While it did not compel a finding that the defendants had control, it might reasonably be thought with other evidence to warrant such a finding. *Hunkins* v. *Company*, 86 N. H. 356, 358; *Guyer* v. *Horgan*, 96 N. H. 288.

The standard to be applied to the defendants' conduct depended upon how the question of control was determined. Whether it was proper to find "that the defendants were not negligent" in turn depended upon whether the applicable standard was employed. Since the fundamental issue of control must have been determined in disregard of competent evidence both the verdict and the finding or ruling that the defendants were not negligent must be set aside. *Desrosiers* v. *Company*, 97 N. H. 525.

The plaintiff's contention that she is entitled to a verdict as a matter of law cannot be accepted. *Boothby* v. *Prescott*, 97 N. H. 504; *LePage* v. *Company*, 97 N. H. 46, 49, and cases cited. If reconsideration should result in a finding of negligence on the part of the defendants, the plaintiff's due care will remain to be determined.

The plaintiff's bill of exceptions incorporates certain requests for rulings of law which were filed with the Court, recites that no

action was taken upon them, but transfers no specific exceptions on that account. Under our practice, a failure to grant applicable requests is commonly regarded as a denial, to which exception will lie. Two of the requests related to the issue of contributory negligence, which was not reached by the court below. The remaining three dealt with general propositions of law, not specifically applied to the facts of the case. It is not the practice here for the court to pass upon abstract propositions which it may or may not consider controlling, merely for the purpose of instructing itself in the law as it might a jury. See *Bolduc* v. *Company*, 97 N. H. 360, 363; *Thistle* v. *Halstead*, 96 N. H. 192, 193. Law which the parties consider applicable may generally be brought to the attention of the Court by oral or written argument. The duty of the Presiding Justice as prescribed by statute is upon request to "give his decision in writing, stating the facts found and his rulings of law." R. L., c. 370, s. 13. The decision rendered below was not necessarily inconsistent with the three requests not relating to contributory negligence, and they require no consideration here.

While the scope of retrial is for the Superior Court (*White* v. *Schrafft*, 94 N. H. 467, 472, 473), it may be appropriate to indicate that none of the findings and rulings appear to be affected by error except as herein specified, and that no necessity for the taking of further evidence appears upon the record before us.

*New trial.*

All concurred.