Portsmouth District Court,
No. 6051.

SAMUEL KLINE &a, d/b/a
G. & S. REALTY

*v.*

MARTIN R. BURNS.

SAME

*v.*

Fred Daggett.

MARTIN R. BURNS.

*v.*

SAMUEL KLINE.

April 5, 1971.

*Shaines*, *Madrigan* and *McEachern* and *Craig E. Turner*
( *Mr. Turner* orally ), for Samuel Kline and Gertrude Kline d/
b/a G. & S. Realty and Samuel Kline individually.

*Boynton, Waldron* and *Dill* and *Nicholas R. Aeschliman* ( *Mr. Aeschliman* orally ), for Martin Burns and Fred Daggett.

*John R. Maher* and *Gerald McGonigle* of So. N. H. Legal Services Assn., Inc., as amicus curiae for Martin Burns and Fred Daggett.

LAMPRON, J. Martin R. Burns, occupying premises at 26 Tanner Court in Portsmouth, instituted an action against Samuel Kline to recover all rent paid during occupancy of the premises on the ground that the rental was in violation of the city housing code. Portsmouth Code of Ordinances ( July 1968 ) ch. 14. Samuel and Gertrude Kline then brought actions for possession under RSA 540:12, 13 - 14 ( supp. ) against Burns at 26 Tanner Court and against Fred Daggett at 28 Tanner Court. The Klines also brought actions against them to recover unpaid rent for these premises. The five actions were tried together.

Trial of all actions before *Alvin E. Taylor*, Esq., Special Justice, who made certain findings, rulings, and the following orders. The motion to dismiss Burns' action against Samuel Kline to recover rent paid was granted. Judgment for plaintiffs Klines in both possessory actions. Verdicts for plaintiffs in the amount of $150 in the actions for unpaid rent brought against each defendant, Burns and Daggett.

The judgments for plaintiffs Klines in the possessory actions are not in issue on this appeal and stand as ordered by the trial court. The exceptions of defendants Burns and Daggett to the court's refusal to set aside the verdicts in favor of the Klines for unpaid rent; and Burns' exception to the granting of defendant's motion to dismiss his action to recover all rents paid to Kline during his tenancy are the only issues to be considered.

The trial court found that the premises at 28 Tanner Court were rented to Daggett during the month of August 1968 for an agreed rental of $50 per month and those at 26 Tanner Court were rented to Burns about December 1, 1968 at the same rental. " Due to the oral nature of the leasing it is evident that a tenancy at will was created. " " Rent for the months of August, September, and October, 1969 remain unpaid. The Building Inspector for the City, together with the Electrical Inspector, conducted a joint inspection of both premises in Feb-

ruary 1969 and found certain violations of the Building Code, some of which had existed for a long period of time. Neither could testify, however, as to the condition of the premises at the time of the original tenancy. It seems clear that at that time both premises contained certain defects, the exact nature and extent of which are in dispute. It is also clear to the Court that by February 1969 there were definite violations of the Building Code and that the plaintiff landlords were put on notice of those violations. "

The court also found that "although there were certain violations of the Building Code . . . these are not determinative of the rights of the parties. It seems clear from the testimony that if violations existed at the time of the original tenancy that the defendant tenants had equal knowledge of at least obvious defects . . . . Both tenants possessed the option of either ( 1 ) not entering into the tenancy, or ( 2 ) vacating when latent defects became known. Further, neither tenant made known the complaints of the conditions of the premises, and most of the defects complained of were discovered by routine inspection procedures of City officials. The proper action for enforcing the ordinance rests with the City officials and once their attention was directed to the violations, it was their duty to act . . . . It has long been the general rule of law that, absent an agreement to repair, the tenant may not refuse to pay rent because of the landlord's failure to repair . . . . It is the Court's opinion that, in the absence of statute or ordinance, they cannot continue to occupy the premises rent-free.

"Although there is conflicting testimony, the landlords at some time subsequent to receiving official notification of violations expressed the intent to have the buildings demolished. " " The Court is not unmindful of the situation faced by defendant tenants in attempting to procure living quarters . . ."

It is evident from the above findings and rulings that the trial court's verdicts for the landlords for unpaid rent, and the dismissal of tenant Burns' action to recover the rent paid during his tenancy because the premises did not comply with the housing code, were based on the following common law principles governing the rights and duties of landlords and tenants which still prevail in this jurisdiction. "There is no warranty implied in the ordinary contract of letting that the premises are reasonably safe or suitable for the uses intended. " *Marston* v.

*Andler*, 80 N.H. 564, 122 A. 329 ( 1923 ). The only duty the law imposes on a landlord for the benefit of his tenants, insofar as the leased premises are concerned, is a limited duty not to deceive the tenants as to the dangers incident to their use of which the landlord knows and they do not. *Black* v. *Fiandaca*, 98 N.H. 33, 35, 93 A.2d 663, 665 ( 1953 ). In other words, the " rule of *caveat emptor* applies the same as between buyer and seller. " *Towne* v. *Thompson*, 68 N.H. 317, 319, 44 A. 492, 493 ( 1895 ). The landlord is under no legal duty to repair the leased premises unless he is so obligated by the express terms of the tenancy. *Hunkins* v. *Company*, 86 N.H. 356, 357, 169 A. 3, 4 ( 1933 ); *Busick* v. *Corporation*, 91 N.H. 257, 18 A.2d 190 ( 1941 ). The landlord's breach of an express covenant to repair does not excuse, nor is it a defense to, the failure of the tenant to pay rent. *Association* v. *Company*, 67 N.H. 450, 451, 39 A. 330, 331 ( 1893 ).

The briefs submitted on behalf of Burns and Daggett take the position that the trial court erred in ruling that violations of the housing code by the landlords were not determinative of the rights of the parties. They contend that the duty to comply with the code was a contractual obligation of the landlords to the tenants and that their obligation to pay rent was dependent on the landlords' performance of their obligation. They maintain also that the common-law principles of landlord and tenant relied on by the trial court, that is, ( 1 ) the doctrine of caveat emptor by which the tenants take the premises as they are in the absence of fraudulent concealment of defects; ( 2 ) the lack of duty on the landlords to keep the premises in repair; ( 3 ) the absence of mutual dependency between the obligations of the landlords and those of the tenants, are all remnants of an ancient feudal system and anachronisms in our present society. *See* 1 American Law of Property *s.* 3.78 ( 1952 ); 44 Denver L.J. 387 ( 1967 ); 5 Suffolk U.L. Rev. 213, 215 ( 1970 ).

Under the tenurial system a lease was considered primarily as a conveyance of lands for a certain term or at will. 2 Blackstone, Commentaries 317 ( 5th ed. 1773 ); 1 Tiffany, Real Property *s.* 74 ( 3d ed. 1939 ). The tenant was considered both an owner and occupier in order to provide him with the remedies with which to protect his interest against the landlord and others. *Id. ss.* 95-98; 1 American Law of Property *s.* 3.11 ( 1952 ); 35 N.Y.U.L. Rev. 1279 ( 1960 ). Furthermore, in the

agrarian society then existing, the value of the lease to the tenant was the land itself which would often yield the rent. 3 Tiffany, *supra s.* 876; 37 Univ. Chi. L. Rev. 798, 799 ( 1970 ). Also the buildings on the land were mostly incidental to the lease. They were constructed simply without modern conveniences and could be easily kept in repair by the tenant. Because the lease was primarily a conveyance of land, the covenants of the parties were considered to be mutually independent of each other. 6 Williston, Contracts *s.* 890, at 586-89 ( 3d ed. W.H.E. Jaeger 1962 ).

Nowadays the value to the tenant of his lease of an apartment is not in the land itself, but rather, in the right to enjoy the building thereon as a place in which to live. He is more concerned with habitability than with the possibility of the landlord's interference with his possession. Keeping the apartment in a livable state is much more complex and costly than it was in the agrarian society which gave birth to the feudal system and the ensuing common law of landlord and tenant. 1 American Law of Property *s.* 3.78, at 347 ( 1952 ). The importance of a lease of an apartment today is not to create a tenurial relationship between the parties, but rather, to arrange the leasing of a habitable dwelling. *Lemle* v. *Breeden*, 51 Hawaii 426, 429, 462 P.2d 470, 472 ( 1969 ); *Javins* v. *First Nat'l Realty Corp.*, 428 F.2d 1071, 1074 ( D.C. Cir. 1970 ); *Marini* v. *Ireland*, 56 N.J. 130, 144, 265 A.2d 526, 532 ( 1970 ); 2 Powell, Real Property *s.* 221( 1 ), at 179 ( 1967 ).

Our legislature, like those of many other states, recognized the need and desirability of insuring adequate housing by adopting legislation granting to municipalities the power to establish and enforce minimum standards for use and occupancy of dwellings. Laws 1959, ch. 293 ( now RSA ch. 48-A( supp. ) ); *see Pines* v. *Perssion*, 14 Wis. 2d 590, 595, 111 N.W.2d 409, 412 ( 1961 ); A.B. Foundation, Model Residential Landlord-Tenant Code ( Tent. Draft 1969 ). The city of Portsmouth adopted the housing code involved in this case under the authority of RSA 48-A ( supp. ). Portsmouth Code of Ordinances ch. 14. In order to help insure the desired adequate housing, "[c]ourts have a duty to reappraise old doctrines in the light of the facts and values of contemporary life — particularly old common law doctrines which the courts themselves created and developed." *Javins* v. *First National Realty Corp.*, 428 F.2d 1071, 1074 ( D.C. Cir. 1970 ).

The following are factors to be considered in the appraisal of the legal principles to be applied to the present day relationship of landlord and tenant: ( 1 ) Our legislature has recognized ( RSA ch. 48-A ) that the public welfare requires that dwellings offered for rental be at the beginning, and continue during the tenancy to be, in a safe condition and fit for human habitation. ( 2 ) Common experience demonstrates that the landlord has a much better knowledge of the conditions of the premises than the tenant. Furthermore housing code requirements and violations are usually known or made known to the landlord. *Marini* v. *Ireland,* 56 N.J. 130, 142, 265 A.2d 526, 533 ( 1970 ); 44 Denver L.Q. 387, 398 ( 1967 ); *see* RSA 48-A:3 ( III ) ( supp. ). It follows that the landlord is in a better position to know of latent defects, such as some of those involved in this case, which might go unnoticed by the tenant who rarely has sufficient knowledge or expertise to see or discover defects in wiring, fusing, or venting of gas appliances or furnaces. *See Reste Realty Corp.* v. *Cooper,* 53 N.J. 444, 452, 251 A.2d 268, 272 ( 1969 ). ( 3 ) It is appropriate that the landlord who will retain ownership of the premises and any permanent improvements should bear the cost of repairs necessary to make the premises safe and fit for human habitation. 1 American Law of Property *s.* 3.78, at 347-48 ( 1952 ). ( 4 ) In today's housing market, the landlord is usually in a much better bargaining postion than the tenant which results in rental of poor housing in violation of public policy. A. B. Foundation, Model Residential Landlord-Tenant Code 9 ( Tent. Draft 1969 ); 50 B.U.L. Rev. 24, 38, 39 ( 1970 ).

In our opinion the above considerations demonstrate convincingly that in a rental of an apartment as a dwelling unit, be it a written or oral lease, for a specified time or at will, there is an implied warranty of habitability by the landlord that the apartment is habitable and fit for living. This means that at the inception of the rental there are no latent defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable. *Marini* v. *Ireland,* 56 N.J. 130, 144, 265 A.2d 526, 533 ( 1970 ); *Javins* v. *First Nat'l Realty Corp. supra; Lemle* v. *Breeden,* 51 Hawaii 426, 433, 462 P.2d 470, 474 ( 1969 ); *Lund* v. *MacArthur,* 51 Hawaii 473, 475, 482 P.2d 461, 463 ( 1969 ).

" The very object of the letting was to furnish the defendant with quarters suitable for living purposes. This is what the landlord at least impliedly ( if not expressly ) represented he had available and what the tenant was seeking. " *Marini* v. *Ireland, supra* at 144, 265 A.2d at 533-34; 50 B.U.L. Rev. 24, 38 ( 1970 ). The warranty of habitability which we hold exists in such a case is imposed by law on the basis of public policy. It arises by operation of law because of the relationship of the parties, the nature of the transaction, and the surrounding circumstances. *See Elliott* v. *Lachance*, 109 N.H. 481, 256 A.2d 153 ( 1969 ).

Adoption of this view makes available to the tenant the basic contract remedies of damages, reformation, and rescission. *Lemle* v. *Breeden*, 51 Hawaii 426, 436, 462 P.2d 470, 475 ( 1969 ). The tenant can obtain relief by instituting an action for breach of warranty or by offsetting his damages against a claim made against him by the landlord. *Varney* v. *General Enolam Co.*, 109 N.H. 514, 257 A.2d 11 ( 1969 ); 54 Geo. L.J. 519, 527, 528 ( 1966 ); 5 Suffolk U.L. Rev., 212, 230 ( 1970 ); *see* 84 Harv. L. Rev., 729, 736 ( 1971 ).

In order to constitute a breach of the implied warranty of habitability the defect must be of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living therein. *Reese* v. *Diamond Housing Corp.*, 259 A.2d 112 ( D.C. Ct. App. 1969 ). The nature of the deficiency, its effect on habitability, the length of time for which it persisted, the age of the structure, the amount of the rent, the area in which the premises are located, whether the tenant waived the defects, whether the defects resulted from malicious, abnormal, or unusual use by the tenant, are among the factors to be considered in deciding if there has been a breach of the warranty of habitability. *Marini* v. *Ireland*, 56 N.J. 130, 144-45, 265 A.2d 526, 534 ( 1970 ); *Reese* v. *Diamond Housing Corp.*, 259 A.2d 112 ( D.C. Ct. App. 1969 ); *see Academy Spires Inc.* v. *Brown*, 111 N.J. Super. 477, 268 A.2d 556 ( 1970 ). The existence of a breach is usually a question of fact to be determined by the circumstances of each case. *Reese* v. *Diamond Housing Corp.*, 259 A.2d 112, 113 ( D.C. Ct. App. 1969 ).

If a material or substantial breach of the implied warranty of habitability is found, the measure of the tenant's damages is the difference between the agreed rent and the fair rental value

of the premises as they were during their occupancy by the tenant in the unsafe, unsanitary or unfit condition. In other words, the tenant's rent liability will be the reasonable rental value of the premises in their condition while occupied. *Pines* v. *Perssion,* 14 Wis. 2d 590, 597, 111 N.W.2d 409, 413 ( 1961 ); *William J. Davis, Inc.* v. *Slade,* 271 A.2d 412, 416 ( D.C. Ct. App. 1970 ); 11 Williston, Contracts *s.* 1343 ( 3d ed. W.H.E. Jaeger 1968 ); *see Coos Lumber Co.* v. *Builders Supply Co.*, 104 N.H. 404, 408, 188 A.2d 330, 332 ( 1963 ).

*Exceptions sustained. Remanded.*

All concurred