Hooksett District Court
No. 2007-675

LIAM HOOKSETT, LLC

v.

ROBERT BOYNTON & a.

Submitted: May 22, 2008
Opinion Issued: August 20, 2008

Liam Hooksett, LLC, filed no brief.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Wilbur A. Glahn, III* and *Adam M. Hamel* on the brief), for the defendants.

DUGGAN, J. The defendants, Robert Boynton and Tina LaRochelle (tenants), appeal a decision of the Hooksett District Court (*LaPointe,* J.) ruling against them in an action by the plaintiff, Liam Hooksett, LLC, for unpaid rent and possession of certain property based upon nonpayment of rent. *See* RSA 540:13 (2007). We hold that the plaintiff failed to establish that it is the owner or lessor of the property at issue. *See* RSA 540:12 (2007). We further hold that, because the plaintiff filed an action to recover both possession and unpaid rent against the tenants, the tenants were statutorily entitled to raise any defense, claim, or counterclaim in response to the plaintiff's action. *See* RSA 540:13, III (2007). Accordingly, we reverse.

The record supports the following facts. Since at least December 2005, the tenants have rented an apartment at 1373 Hooksett Road in Hooksett (the property) without a lease on a month-to-month basis. On June 4, 2007, Lindsay Bernard, the plaintiff's manager, hand-delivered a demand for rent to the tenants. On July 10, 2007, Bernard again served the tenants with a demand for rent. Bernard then sent an eviction notice to the tenants on July 25, 2007, ordering them to vacate the premises by August 3, 2007.

On August 6, 2007, Bernard filed a writ on behalf of the plaintiff against the tenants, seeking possession of the apartment and unpaid rent in the amount of $2,350. That same day, Bernard also signed and filed an "Affidavit of Ownership/Tenancy" (affidavit), which certified that the plaintiff was the owner of the property. The affidavit also stated that the person signing the affidavit "understand[s] that if th[e] certificate is incorrect, th[e] case may be summarily dismissed by the court." (Emphasis omitted.) The tenants filed *pro se* appearances on August 21, 2007, and, in their appearance forms, asserted counterclaims under RSA chapter 540-A (2007).

The trial court held a merits hearing on September 4, 2007, at which Bernard appeared on behalf of the plaintiff, and the tenants appeared *pro se.* At the beginning of the hearing, the trial court noted that the plaintiff was seeking both unpaid rent and possession of the property based upon nonpayment of rent. It further explained:

> [T]he Plaintiff has to meet the burden of proof and try, they have to establish that the named owner, Liam Hooksett, LLC actually owns this property. And I assume the representative, to the extent she's qualified to testify about that, will establish that by deed or testimony or however she chooses to do it.
>
> And then she has to establish that the notices are in proper form. . . . So the way we'll proceed is I'll swear in the Plaintiff's

representative. She'll first address the issue of her authority to appear on behalf of Liam Hooksett, LLC. And then beyond that, she'll, if she gets past that, she'll start telling me about ownership and the notices that were given.

Bernard then testified that she was the plaintiff's manager, the plaintiff had three members, "those members [had] authorized [her] appearance on behalf of Liam Hooksett, LLC at [the] hearing," and she had personal knowledge of the matters at issue. Based upon this testimony, the trial court found that Bernard could represent the plaintiff in the action.

Subsequently, the trial court heard testimony from Bernard and both tenants concerning the factual circumstances giving rise to the action. The essence of Bernard's testimony was that the tenants had failed to pay rent for June and July 2007. The tenants raised two issues in defense. First, they claimed that an individual named Kevin McCarthy, not the plaintiff, was the actual owner of the property. Although Bernard had not previously demonstrated, by evidence or testimony, that the plaintiff was the actual owner of the property, the trial court did not address this issue.

Second, the tenants attempted to testify that they had withheld rent because their apartment violated the standards of fitness for health and safety and was therefore uninhabitable. *See* RSA 540:13-d (2007). They also attempted to testify to facts underlying their counterclaims under RSA chapter 540-A. The trial court, however, prevented the tenants from raising either the defense or counterclaims. It ruled: (1) the tenants could not assert counterclaims arising under RSA chapter 540-A against a possessory action based upon nonpayment of rent; and (2) the tenants had "failed to comply with the statutory prerequisites of RSA 540:13-d" by not paying rent "in escrow . . . as it bec[ame] due," and, therefore, could not assert a defense for breach of the warranty of habitability under that statute. Accordingly, the trial court ruled in favor of the plaintiff.

On appeal, the tenants argue that the trial court's decision should be reversed because: (1) the plaintiff failed to establish that it was the actual owner of the property; (2) the trial court erroneously prevented them from raising their counterclaims; (3) to the extent that RSA 540:13-d applied, the trial court erroneously construed it as requiring them to have previously paid rent into escrow; and (4) Bernard failed to comply with District Court Rule 1.3(D).

Resolution of this case requires us to construe several statutory provisions. In matters of statutory interpretation, we are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *In the Matter of Carr & Edmunds*, 156 N.H. 498, 503-04 (2007). When examining the language of a statute, we ascribe the plain and

ordinary meaning to the words used. *Id.* at 504. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.* We review the trial court's interpretation of a statute *de novo. Hutchins v. Peabody*, 151 N.H. 82, 84 (2004).

The tenants first argue that the plaintiff failed to meet its burden of proving that it was the actual owner of the property. RSA 540:12, entitled "Possessory Action," provides that "[t]he owner, lessor, or purchaser at a mortgage foreclosure sale of any tenement or real estate may recover possession thereof from a lessee, occupant, mortgagor, or other person in possession, holding it without right, after notice in writing to quit the same as herein prescribed." The plaintiff filed a writ seeking possession of the property. Thus, to prevail in this action, the plaintiff was required to prove that it was the "owner, lessor, or purchaser at a mortgage foreclosure sale" of the property. RSA 540:12.

■ The record, however, contains no evidence demonstrating that the plaintiff met any of these requirements. Bernard never testified that the plaintiff was the actual owner of the property. Although Bernard attached an affidavit to the writ in which she certified that the plaintiff was the owner of the property, that affidavit was not admitted as evidence at the hearing. Indeed, the trial court neither referenced the affidavit nor made a finding that the plaintiff owned the property based upon this affidavit. Rather, the trial court appears to have proceeded with the hearing on the assumption that the plaintiff was the property's owner.

To the extent the trial court may have relied upon this affidavit to find that the plaintiff was the owner of the property, it erred. The so-called affidavit merely states that Bernard was "certify[ing]" that the plaintiff was the owner of the property, but does not indicate that it was notarized or otherwise signed under oath. Further, the affidavit's assertion that the plaintiff is the owner of the property is unsupported by any other evidence in the record, including testimony by Bernard. Accordingly, because the plaintiff failed to meet its burden of establishing that it was the owner of the property, as required under RSA 540:12, we reverse.

The tenants next argue that the trial court erroneously prevented them from raising their counterclaims, and misconstrued RSA 540:13-d as requiring them to have paid rent into escrow before they could assert the statutory defense for violations of the standards of fitness. Our holding that the plaintiff failed to meet its burden of proving ownership of the property would normally make it unnecessary for us to address these questions.

These issues, however, may arise again, not only in other unrelated landlord-tenant actions, but also with respect to another action concerning these tenants, this property, and the actual owner of the property. *See Appeal of Seacoast Anti-Pollution League*, 125 N.H. 708, 719 (1985). Thus, in the interest of judicial economy, we will address these questions. *Id.*

Several statutory provisions "provide the landlord with a summary process for obtaining a writ of possession in the district courts," and "provide[] tenants with defenses based on landlord violations of their obligations." 17 C. SZYPSZAK, NEW HAMPSHIRE PRACTICE, REAL ESTATE § 9.07, at 233 (2003); *see* RSA ch. 540 (2007). After the landlord provides the tenant with proper notice, *see* RSA 540:2-:5, :12, the landlord may commence a possessory action based upon nonpayment of rent by filing a writ in district court. *See* RSA 540:13. In addition to seeking possession of the property, the landlord has the *option* to make a claim for unpaid rent. *See* RSA 540:13, III; *see also Matte v. Shippee Auto*, 152 N.H. 216, 218-19 (2005).

When a "landlord elects to make a claim for unpaid rent, the court *shall* consider *any* defense, claim, or counterclaim by the tenant which offsets or reduces the amount owed to the [landlord]." RSA 540:13, III (emphases added). In these circumstances, "[i]f the court finds that the landlord is entitled to possession on the ground of nonpayment of rent, it shall also award the landlord a money judgment." *Id.* If, however,

> the court determines that the amount owed by the landlord to the tenant, as a result of set-off or counterclaim exceeds or equals the amount of rent and other lawful charges owed by the tenant to the landlord, judgment in the possessory action shall be granted in favor of the tenant. If the court finds that the tenant's counterclaim exceeds the amount of the nonpayment, a money judgment shall issue in favor of the tenant.

*Id.*

█ In this case, the trial court prevented the tenants from asserting a defense under RSA 540:13-d and counterclaims under RSA chapter 540-A. First, the trial court ruled that the tenants could not assert counterclaims arising under RSA chapter 540-A to a possession action based upon nonpayment of rent. In so doing, the trial court appears to have overlooked RSA 540:13, III, which expressly permitted the tenants to raise *any* claim or counterclaim that offsets or reduces the amount owed to the landlord. RSA 540-A:2 and RSA 540-A:3 prohibit landlords from engaging in certain actions, including violating a tenant's right to quiet enjoyment of his tenancy, *see* RSA 540-A:2, and willfully causing the interruption of utility

services, *see* RSA 540-A:3, I. RSA 540-A:4, II gives the tenant a right to seek relief for such violations. Therefore, because the plaintiff sought unpaid rent, the court was statutorily required to consider any claim or counterclaim by the tenants, including one under RSA chapter 540-A, that offset or reduced the amount owed to the plaintiff. *See* RSA 540:13, III.

■ Second, the trial court prevented the tenants from raising a defense under RSA 540:13-d. Under that statute, "when a premises leased or rented for residential purposes is in substantial violation of the standards of fitness for health and safety, and the violation materially affects the habitability of the premises, the tenant has an affirmative defense to an action for possession based on non-payment of rent." *Hutchins*, 151 N.H. at 84-85. "This defense precludes the landlord from maintaining an action for non-payment of rent so long as the four factors set forth in [RSA 540:13-d, I(a)] have been satisfied." *Id.* at 85. When a tenant raises this affirmative defense,

> the court may order the [possessory] action continued for a reasonable time not to exceed one month to enable the [landlord] to remedy the violation. *At the time such continuance is ordered,* the court shall require the [tenant] . . . to pay into court any rent withheld or becoming due thereafter as it becomes due.

RSA 540:13-d, II (emphasis added).

■ The trial court prevented the tenants from raising this statutory defense in part because, in its view, the tenants had "failed to comply with the statutory prerequisites of RSA 540:13-d" by not paying rent "in escrow . . . as it bec[ame] due." The plain language of RSA 540:13-d, II, however, requires a tenant to pay into court any rent withheld or becoming due only in those circumstances where a court continues an action to give the landlord an opportunity to remedy the violation. Contrary to the trial court's ruling, nothing in RSA 540:13-d suggests that a tenant is required to pay rent into escrow at any time before such a continuance. The trial court thus erred in its interpretation of RSA 540:13-d, II.

The plaintiff in this case elected to seek unpaid rent under RSA 540:13, III. Therefore, the tenants were entitled to raise any defenses, claims, or counterclaims in response to the plaintiff's action. To the extent the tenants raised an affirmative defense under RSA 540:13-d, I, they needed to meet the four factors in that statute, which, among other things, required the tenants to "prove[] by clear and convincing evidence that, while not in arrears in rent, [they] provided notice of the violation to [the plaintiff]." RSA 540:13-d, I(a). The tenants, however, were not obligated to have paid rent into escrow before they asserted such a defense. Further, because

nothing in the record suggests that the trial court ordered a continuance to allow the plaintiff to remedy the alleged violation of the standards of fitness for health and safety, the tenants were not required to have paid to the court rent withheld or becoming due. Accordingly, the trial court erred in preventing the tenants from raising any defenses or counterclaims to the plaintiff's action.

The tenants argue that, in addition to raising a defense under RSA 540:13-d, they also asserted a breach of the common law implied warranty of habitability. *See Kline v. Burns*, 111 N.H. 87, 92-93 (1971) (recognizing implied warranty of habitability in residential leases; explaining that a tenant may obtain basic contract remedies of damages, reformation, and rescission by instituting an action for breach of warranty or by offsetting his damages against a claim made against him by the landlord; and setting forth factors to be considered in deciding whether there has been a breach of warranty). The tenants contend, therefore, that the trial court erred in applying the requirements of RSA 540:13-d to their counterclaim for breach of the common law implied warranty of habitability. The record, however, fails to demonstrate that the tenants raised a distinct counterclaim for breach of the common law implied warranty of habitability at the trial court.

At the hearing, the tenants generally stated that they were raising violations of fitness. The trial court treated the tenants' counterclaim as a statutory defense under RSA 540:13-d. The tenants never disputed this characterization either at the hearing or in a motion for reconsideration. Thus, the trial court had no opportunity to consider the interplay between the common law implied warranty of habitability and the statutory defense under RSA 540:13-d. While we acknowledge that the tenants were self-represented in the trial court, our longstanding rule is that we do not review matters not raised at the earliest possible time. *See Mortgage Specialists v. Davey*, 153 N.H. 764, 786 (2006). Therefore, because the tenants failed to preserve this issue for appellate review, we need not reach it. *See Tiberghein v. B.R. Jones Roofing Co.*, 151 N.H. 391, 394 (2004).

Finally, the tenants argue that the trial court erred in not dismissing the case based upon Bernard's failure to comply with District Court Rule 1.3(D)(1) before appearing on behalf of the plaintiff. This question is unlikely to arise again, as we assume that the parties will abide by the rule in future actions. *See* DIST. CT. R. 1.3(D)(1) (setting forth requirements for non-lawyers who seek to appear, plead, prosecute or defend any action for any party, including filing with the clerk of court (1) a notarized power of attorney signed by the party for whom the non-lawyer seeks to appear, and

(2) an affidavit under oath in which the non-lawyer discloses certain information). Accordingly, we need not address this issue. *See Hoebee v. Howe,* 98 N.H. 168, 174 (1953).

*Reversed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.