**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2013-0761, <u>Brady Sullivan Millworks, LLC v. Lifeshare Liquidation Company, Inc. & a.</u>, the court on March 12, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendants, Lifeshare Liquidation Company, Inc. and Lifeshare Management Group, Inc. (collectively, Lifeshare), appeal an order of the Superior Court (<u>Garfunkel</u>, J.) granting the summary judgment motion of the plaintiff, Brady Sullivan Millworks, LLC (Brady), and denying Lifeshare's cross-motion for summary judgment. We affirm in part, reverse in part, and remand.

The following facts are drawn from the trial court's order or are otherwise undisputed. In May 2006, Lifeshare entered into a lease agreement with Tokena Corporation (Tokena), which owned a building at 95 Eddy Road in Manchester. The agreement stated, in pertinent part, that Lifeshare would lease from Tokena for a period of five years:

> 7,500 square feet of interior space [of the building at 95 Eddy Road] . . . (hereinafter referred to as the "Leased Premises"). Plus [Lifeshare]'s obligation to lease 3,750 square feet of the Leased Premises, identified as Contingent Space . . . shall be contingent on [Lifeshare] executing a sublease for its existing leasehold at 225 Eddy Road, Manchester, NH and, upon satisfaction of such contingency, the Leased Premises shall automatically be deemed to include the Contingent Space without further act of the parties.

Accordingly, Lifeshare would initially occupy the 7,500 square-foot space (Initial Space), and it would occupy the 3,750 square-foot Contingent Space after subleasing its location at 225 Eddy Road. Tokena agreed to "fit up" both the Initial Space and the Contingent Space at its own expense, and the term of the lease would commence once the fit up of the Initial Space occurred.

A month later, in June 2006, Tokena entered into a purchase and sale agreement with Brady for the building at 95 Eddy Road. Tokena and Brady agreed that Tokena would complete the fit up of the Initial Space for Lifeshare, and Brady would, upon closing, assume Tokena's other obligations under the lease with Lifeshare.

In August 2006, Lifeshare sublet its space at 225 Eddy Road, effective September 1, and notified Tokena of the sublease. Tokena subsequently completed the fit up of the Initial Space, and Lifeshare commenced occupancy of that space on September 15. The sale of the building to Brady closed on November 16.

Beginning in December 2006, representatives of Brady met with Lifeshare to discuss selling, rather than leasing, the Initial Space to Lifeshare. On numerous occasions during the negotiations, Lifeshare informed Brady that, if the parties were unable to reach a purchase agreement, it expected the Contingent Space to be fit up and leased to it. Brady stated that it did not intend to fit up or lease the Contingent Space. Subsequently, in May 2007, Brady notified Lifeshare that it would lease Lifeshare the Contingent Space with the fit up performed at Lifeshare's expense and with the lease rate to be negotiated.

Although the parties entered into a purchase and sale agreement for the Initial Space in August 2007, the deal did not close. Thereafter, Lifeshare notified Brady that, pursuant to the lease, it wanted the Contingent Space fit up at Brady's expense. Brady refused, and, in December 2008, Lifeshare vacated, and ceased paying rent for, the Initial Space.

Brady then sued Lifeshare. Thereafter, the parties filed cross-motions for summary judgment. In ruling on the cross-motions, the trial court first determined that Brady's obligation to lease the Contingent Space was not a condition of the lease because the contingency — Lifeshare's subleasing of its space at 225 Eddy Road — occurred before the lease became effective. The court concluded that "from day one the lessor was obligated by the terms of the lease to provide the 'Leased Premises,' including both the [Initial Space] as well as the Contingent Space." The trial court explained that Brady's "failure to fit up and lease the Contingent Space was therefore simply a failure to provide the entirety of the Leased Premises bargained for in the lease."

Nonetheless, the trial court determined that, based upon "the independent covenants rule," Lifeshare was obligated to continue to pay rent for the Initial Space, pursuant to the lease, despite Brady's failure to fit up and lease the Contingent Space. The court observed that its ruling yielded a harsh result, but noted that it was bound by Matte v. Shippee Auto, 152 N.H. 216, 220-22 (2005), in which we reaffirmed the independent covenants rule. The court also noted that Lifeshare could have lessened the harsh outcome by maintaining its counterclaims against Brady rather than voluntarily nonsuiting them with prejudice. Accordingly, the trial court granted Brady's summary judgment motion and denied Lifeshare's cross-motion for summary judgment.

In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in

2

its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Granite State Mgmt. & Res. v. City of Concord, 165 N.H. 277, 282 (2013). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. (quotation omitted).

On appeal, Lifeshare presents three separate arguments to support its contention that the trial court erred when it ruled that Lifeshare was obligated to continue paying rent for the Initial Space. Lifeshare argues that: (1) the independent covenants rule does not apply because the Contingent Space provision in the lease was a condition and not a covenant; (2) even if we deem the Contingent Space provision to be a covenant, Lifeshare's obligation to pay rent for the Initial Space was dependent upon Brady's fulfillment of its obligation to fit up and lease the Contingent Space; and (3) even if we deem the Contingent Space provision to be a covenant, and even if the independent covenants rule applies, Brady's failure to fit up and lease the Contingent Space "constituted a partial actual eviction that entitled Lifeshare to cease payment of rent and cancel the lease." Lifeshare further urges us to abandon the independent covenants rule and, instead, adopt the doctrine of dependent lease covenants. Lifeshare also contends that, because Brady violated the terms of the lease when it failed to provide the Contingent Space, and because no reasonable fact-finder could conclude that Lifeshare waived its right to lease the Contingent Space, the trial court erred in denying its motion for summary judgment.

In response, Brady maintains that the independent covenants rule should not be abandoned, applies here, and is dispositive. Brady also argues that Lifeshare did not properly preserve its "partial actual eviction" argument for our review, and that, even if it did, Lifeshare could not have been "partially actually evicted as [Lifeshare] was never in possession of the Contingent Space." Brady further asserts that Lifeshare is not entitled to summary judgment in its favor because "the case would necessarily have to be remanded . . . as there is a factual dispute involving Lifeshare's waiver of the right to demand fit-up and occupancy of the Contingent Space."

As a threshold matter, we recognize that, in the trial court, neither the parties nor the court specifically addressed the issue of whether Brady's actions constituted a partial actual eviction. Ordinarily, we will not review arguments that were not timely raised before the trial court. Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014). "This rule, however, is not absolute." Id. "As we have previously recognized, preservation is a limitation on the parties to an appeal and not the reviewing court." Id. The issue of whether Brady's actions constituted a partial actual eviction presents a question of law. See id. Moreover, because the facts material to disposition of the partial actual eviction issue are not in dispute, our consideration of the

issue does not require additional fact finding by the trial court. Therefore, in the interest of judicial economy, and because both parties fully addressed the issue in their briefs and during oral argument before us, we will consider it. See id.

We agree with Lifeshare that, regardless of whether the Contingent Space provision was a condition or a covenant, Brady's failure to fit up and lease the Contingent Space entitled Lifeshare to cease paying rent for the Initial Space. Therefore, we need not address Lifeshare's challenge to the viability of the independent covenants rule.

Lifeshare first argues that the Contingent Space provision was a condition, rather than a covenant, of the lease agreement.

> The primary distinction between a covenant and condition [in a lease] pertains to the remedy in case of a breach; the breach of a condition upon which a leasehold estate is granted results in automatic termination or forfeiture of the estate, whereas the breach of a covenant does not automatically terminate the estate, but instead subjects the breaching party to liability for monetary damages in an action at law or, in extraordinary circumstances, the remedy of a conditional decree of cancellation.

49 Am. Jur. 2d Landlord and Tenant § 58, at 98-99 (2006). Arguably, fitting up and leasing the Contingent Space was a condition upon which the entire leasehold was granted. See id. Under the terms of the lease, once Lifeshare sublet its existing leasehold, "the Leased Premises [were] automatically . . . deemed to include the Contingent Space without further act of the parties." Accordingly, if the Contingent Space provision was a condition, Brady's failure to fit up and lease the Contingent Space constituted a breach thereof, the lease was automatically terminated, and, therefore, Lifeshare was entitled to cease paying rent for the Initial Space. See id.

On the other hand, if Lifeshare's obligation to pay rent for the Initial Space was a covenant that was dependent upon Brady's obligation to fit up and lease the Contingent Space, Lifeshare would likewise prevail because Brady failed to perform its obligation. See Matte, 152 N.H. at 220 (noting that, under the dependent covenant theory, "the tenant's obligation to pay rent [is] dependent upon the landlord's performance of some or all of the landlord's obligations under the lease").

Finally, if the Contingent Space provision was a covenant independent of Lifeshare's obligation to pay rent, Lifeshare would prevail because Brady's failure to fit up and lease the Contingent Space constituted a partial actual eviction. The independent covenants rule is a "common law rule that the covenants of a lease are independent, and only an actual or constructive

4

eviction will relieve a tenant of his obligation to pay rent." Id. An actual eviction can be either total or partial. See Echo Consulting Services v. North Conway Bank, 140 N.H. 566, 568 (1995). "A partial actual eviction occurs when the landlord deprives the tenant of physical possession of some portion of the leased property, including denial of access to the leased premises." Id.

Here, Brady did not fit up and lease the Contingent Space despite Lifeshare's fulfillment of the contingency in the lease agreement prior to the inception of the lease. According to the clear and unambiguous terms of the lease, "upon satisfaction of such contingency, the Leased Premises [were] automatically . . . deemed to include the Contingent Space without further act of the parties." As the trial court correctly noted, Brady's failure to fit up and lease the Contingent Space was a failure to provide the entire leased premises to Lifeshare as provided in the lease agreement. It is irrelevant that Lifeshare never occupied the Contingent Space because, by denying Lifeshare access to the Contingent Space, Brady deprived Lifeshare of "physical possession of some portion of the leased property," which constituted a partial actual eviction. Id. Accordingly, Lifeshare was relieved of its obligation to pay rent for the Initial Space. See Matte, 152 N.H. at 220.

In sum, regardless of which analytical framework applies in this case, Lifeshare was not obligated to continue paying rent to Brady for the Initial Space. Accordingly, the trial court's decision to the contrary was erroneous, and we reverse the trial court's grant of Brady's motion for summary judgment.

This does not mean, however, that Lifeshare is entitled to entry of summary judgment in its favor. Brady argues that, because a factual dispute exists regarding whether Lifeshare waived its right to the fit up and lease of the Contingent Space, summary judgment in favor of Lifeshare is not warranted and that we should remand. We agree. A "waiver requires an actual intention to forego a known right." Duke/Fluor Daniel v. Hawkeye Funding, 150 N.H. 581, 584 (2004) (quotation omitted). "Such a waiver should not be presumed; a clear expression of intent to waive the right must exist." Id. (quotation omitted). Here, the trial court did not reach the waiver issue, and there exists a genuine issue as to whether Lifeshare waived its right to demand the fit up and lease of the Contingent Space. Therefore, we remand for further proceedings regarding the waiver issue.

Affirmed in part; reversed in part; and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**