# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0013, <u>John Lukens v. Kevin Quigley & a.</u>, the court on January 15, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The landlord, John Lukens, appeals, and the tenants, Kevin Quigley and Patricia Quigley, cross-appeal, orders of the Circuit Court (<u>Carroll</u>, R., approved by <u>Sadler</u> and <u>Vetanze</u>, JJ.), dismissing the landlord's summary action for possession of residential property for nonpayment of rent, <u>see</u> RSA 540:13 (2007), and awarding the tenants: (1) three months' rent based upon a finding that the eviction was retaliatory, <u>see</u> RSA 540:13-a, :14, II (2007); (2) $608 for a "substantial violation of the standards of fitness for health and safety," <u>see</u> RSA 540:13-d (2007); (3) $1,000 for a violation of the right to quiet enjoyment under RSA 540-A:2 (2007), <u>see</u> RSA 540-A:4, IX(a) (Supp. 2020); RSA 358-A:10, I (2009); and (4) attorney's fees based upon the finding that the landlord violated RSA 540-A:2,[1] <u>see</u> RSA 540-A:4, IX(a). We affirm the award of three months' rent, reverse the award of $608, vacate the awards of $1,000 and attorney's fees, and remand for the entry of judgment in accordance with this order.

We will uphold the trial court's findings unless they lack evidentiary support or are erroneous as a matter of law. <u>Colonial Village v. Pelkey</u>, 157 N.H. 91, 92 (2008). We review its legal conclusions, as well as the application of law to fact, independently for plain error. <u>Id</u>. Thus, our inquiry is to determine whether the evidence presented at trial reasonably supports the trial court's findings, and whether its decision is consonant with applicable law. <u>Id</u>. We review any questions of law, including the trial court's interpretation of statutory provisions, <u>de novo</u>. <u>Id</u>.; <u>Liam Hooksett, LLC v. Boynton</u>, 157 N.H. 625, 628 (2008).

---

[1] The trial court did not expressly articulate the basis for the award of attorney's fees in its order. However, the tenants relied upon RSA 540-A:4, IX(a), the provision that authorizes an award of reasonable attorney's fees incurred in successfully prosecuting a claim under RSA 540-A:2, as the basis for an award of attorney's fees in their pleadings. Moreover, the trial court awarded the tenants their attorney's fees in its order immediately after announcing that it had awarded them $1,000 for the landlord's violation of RSA 540-A:2. The trial court made no finding in its order of bad faith that would have justified an award of attorney's fees, and cited no contractual provision that would have entitled the tenants to an award of fees. In context, therefore, we construe the trial court's order as having grounded the award of attorney's fees upon its finding of a violation of RSA 540-A:2. <u>See</u> <u>In the Matter of Salesky & Salesky</u>, 157 N.H. 698, 702 (2008) (stating that the interpretation of a trial court order is a question of law, which we review <u>de novo</u>).

The property at issue consists of a single-family home with a separate loft above the garage. The tenants leased the property for a three-year term beginning on May 1, 2017. The lease required the tenants to pay $1,520 per month in rent. The lease also allowed the landlord, who resides in Thailand for a portion of the year, to stay in the loft when he was in New Hampshire, but required him to "reimburse [the] tenant[s] for electricity and propane used" during the times that he stayed in the loft. The lease did not articulate how the landlord's use of electricity and propane would be calculated.

During the fall of 2018, a dispute arose between the parties regarding how much the landlord owed for his use of propane and gas. In the course of the dispute, the tenants asked the landlord whether they could simply deduct the amount that the landlord owed for his propane usage from their December rent payment. In response, the landlord stated that, although he preferred to write a check, "if you're paying the rent in cash, deduct the excess."

Thereafter, the tenants sent the landlord a letter showing that they had deducted from their December rent payment $320 for the landlord's use of propane and $300 for his use of electricity. The landlord responded by thanking the tenants for their December cash payment, stating that he "disagree[d] with [them] on the propane, but won't contest it anymore," and proposing a different calculation for his electricity usage if the tenants were "still thinking of re-calculating the shared electricity costs." At no point did the landlord demand that the tenants charge less for his electricity usage. At trial, he testified that he had "given . . . up" his dispute over the propane charge, and was attempting to negotiate a compromise that would lower the electricity charge. Around the same time, the tenants notified the landlord that they intended to vacate the property following the winter, and prior to the expiration of the lease. The landlord responded by urging the tenants not "to break the lease." In a separate e-mail to his real estate agent, the landlord stated that the background of the tenants' threat to vacate the property included the dispute over the landlord's responsibility for the utilities, and that he had in fact "paid $620 for three months for electricity and gas."

A separate dispute arose between the parties regarding a strong sulfur odor that would emanate from the water when the faucets were turned on, but would dissipate as the water ran. During the fall of 2018, while he was still staying in the loft, the landlord eliminated the odor by treating the property's hot water tank. In March 2019, however, while the landlord was in Thailand, the tenants notified him that the odor had returned. They expressed concern that the water was unsafe, and demanded that he have it tested. If he did not test the water, the tenants stated that they would have it tested themselves and deduct the expense from their rent. Although the landlord had a "handyman" inspect the odor, and although the handyman advised the landlord on measures to take in order to address it, the landlord neither addressed the odor nor arranged to have the water tested during the spring of 2019. Nor did

2

the tenants test the water themselves at this time. Nevertheless, the parties exchanged several e-mails regarding the issue during the spring of 2019.

In May 2019, the landlord told the tenants that he would evict them because their May rent had been "short" by $18. The tenants responded that the $18 represented the cost of a water testing kit, and that to avoid eviction, they would pay the $18. However, they asserted that the landlord was still responsible for addressing the water issue. They further claimed that the odor was worsening, and that it caused a burning sensation in their eyes. On May 19, the landlord e-mailed the tenants a demand for rent of $18. After the tenants paid their June rent, the landlord instructed his real estate agent not to cash the check because it would "make[] it more difficult to evict" them.

The landlord returned to the property in June 2019, and accused the tenants of "trespassing." He admitted at that time that he had "done nothing about [the tenants'] main complaint, that the water odor was back," claiming that the tenants had not provided him with information he "need[ed] to diagnose the problem." The landlord claimed that the tenants had "forced" him to return to New Hampshire early "in order to evict" them. On June 11, the parties met in order to discuss their dispute. At that meeting, the landlord served a demand for rent and an eviction notice for the $620 that the tenants had deducted from the December 2018 rent, the $18 that they had deducted from the May 2019 rent, and the June 2019 rent. When the tenants pointed out that they had, in fact, paid both the $18 and the June rent, the landlord responded that the rent was late because, although the tenants had paid it, he had not yet deposited the check, and that they thus owed an additional late fee. The landlord subsequently deposited the June rent check.

On July 3, 2019, the landlord told the tenants that if they paid the $620 they had deducted from their December 2018 rent plus late penalties, he would address the water odor. On July 8, the tenants advised the landlord that they had had the water tested, and that it was hard and showed high calcium, iron bacteria, and hydrogen sulfide levels. The landlord responded by stating that, "[n]ow that . . . [the tenants] ha[d] finally given [him] most of the information [he] need[ed]," he would "try to fix" the issue. By the time of trial in September 2019, however, the landlord still had not addressed the issue. Nevertheless, he introduced at trial the results of testing performed by the New Hampshire Department of Health and Human Services in July demonstrating that the water was, in fact, safe for human consumption, and that "[t]he sulfur odor is not a health hazard. It is just unpleasant."

On July 6, 2019, the landlord served the eviction notice and demand for rent underlying this case based only upon the $620 that the tenants had deducted from the December rent. He filed the possessory action on July 15, but did not assert a claim for unpaid rent. The tenants pleaded ten separate "counterclaims" that sought, inter alia, three months' rent for retaliatory

3

eviction under RSA 540:14, II, damages and attorney's fees pursuant to RSA 540-A:4, IX(a) and RSA 358-A:10, I, for several alleged violations of RSA chapter 540-A (2007 & Supp. 2020), and $608 for breach of the implied warranty of habitability, claiming that $608 represented the difference between the agreed-upon rent and the fair rental value of the property with the malodorous water. The landlord sought to dismiss the counterclaims in part on the basis that, because he had not sought an award of unpaid rent, the tenants were not entitled to assert counterclaims under RSA 540:13, III.

Following a three-day hearing, the trial court: (1) denied the request to dismiss the counterclaims; (2) dismissed the possessory action on the basis that the landlord had acquiesced in the tenants' setoff of $620; (3) found that the landlord had brought the eviction in retaliation for the tenants' complaints about the water, and awarded the tenants three months' rent; (4) found that the malodorous water breached the right to quiet enjoyment under RSA 540-A:2, and awarded the tenants $1,000 plus attorney's fees under RSA 540-A:4, IX(a); and (5) awarded $608 under RSA 540:13-d for breach of the warranty of habitability. The landlord challenges these rulings, arguing in part that the trial court erred by: (1) not dismissing the counterclaims; (2) not finding that the tenants owed at least one week's rent so as to preclude a claim for retaliatory eviction; (3) determining that the eviction was in retaliation for the tenants' good faith report and reasonable belief that the water odor violated RSA chapter 540-A; (4) finding that the water breached the implied warranty of habitability; and (5) exceeding the $1,500 limit on judgments under RSA 540:13.[2] In their cross-appeal, the tenants challenge the trial court's denial of certain other counterclaims that they had raised under RSA chapter 540-A.

We first address the landlord's arguments that the trial court erred by not dismissing the tenants' counterclaims, and by exceeding the $1,500 limitation of RSA 540:13, III. We are the final arbiter of the legislature's intent as expressed in the words of a statute considered as a whole. Liam Hooksett, LLC, 157 N.H. at 627. We ascribe the plain and ordinary meanings to the words used in a statute, construing legislative intent from the language used, and not considering what the legislature might have said or adding language that it did not see fit to include. Id. at 627-28. We interpret statutory language within the context of the entire statutory scheme. Id. at 628.

RSA chapter 540 (Supp. 2020) "authorizes summary possessory actions to simplify and facilitate the landlord's recovery of possession of the premises." So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 498 (2009). Its purpose is to facilitate a landlord's expeditious recovery of

---

[2] We note that, in their brief, the tenants contend that most or all of these arguments are not preserved and are insufficiently developed. We have reviewed the record and conclude that each of the arguments addressed below was sufficiently raised in the trial court, and was adequately developed by the landlord in his brief and answering brief.

possession of leased premises without the delay, loss, or expense to which the landlord would be subjected under a common law action for ejectment. Id.; Matte v. Shippee Auto, 152 N.H. 216, 217-18 (2005). Because RSA chapter 540 establishes rights and benefits to which a landlord was not entitled at common law, we have emphasized that strict compliance with the statute is required. So. Willow Properties, 159 N.H. at 498; Matte, 152 N.H. at 218.

Although the statute allows a landlord the opportunity to seek up to $1,500 in unpaid rent, the landlord is not obligated to make such a claim in a possessory action. See RSA 540:13, III; Liam Hooksett, LLC, 157 N.H. at 629. Once a landlord elects to pursue a claim for unpaid rent, however, the statute entitles the tenant to assert "any defense, claim, or counterclaim . . . which offsets or reduces the amount owed to" the landlord. RSA 540:13, III; Liam Hooksett, LLC, 157 N.H. at 629-30. The statute further provides:

> If the court finds that the landlord is entitled to possession on the ground of nonpayment of rent, it shall also award the landlord a money judgment. If the court determines that the amount owed by the landlord to the tenant, as a result of set-off or counterclaim exceeds or equals the amount of rent and other lawful charges owed by the tenant to the landlord, judgment in the possessory action shall be granted in favor of the tenant. If the court finds that the tenant's counterclaim exceeds the amount of the nonpayment, a money judgment shall issue in favor of the tenant. Any decision rendered by the court related to a money judgment, shall be limited to a maximum of $1,500 and shall not preclude either party from making a subsequent claim in a court of competent jurisdiction to recover any additional amounts not covered by the $1,500 judgment.

RSA 540:13, III. We have interpreted the plain meaning of this provision to be that a "defense, claim, or counterclaim . . . which offsets or reduces the amount owed to" the landlord is available to a tenant in a possessory action only if the landlord elects to seek unpaid rent. Matte, 152 N.H. at 218.

In contrast to a defense, claim, or counterclaim that offsets or reduces the amount of rent owed, we have observed that "[c]ertain defenses are recognized in RSA chapter 540 itself," and that "those defenses are of course cognizable in a summary proceeding brought under that statute." Id. One such defense exists if a landlord brings a possessory action in retaliation for a residential tenant's good faith reporting of what the tenant reasonably believed to be a "violation of RSA chapter 540-A." RSA 540:13-a, I. This defense is available, however, only if the tenant does not owe the landlord "the equivalent of one week's rent or more." RSA 540:13-a. In the event that the tenant proves retaliation, the trial court may award the tenant "damages of not more than 3 months' rent." RSA 540:14, II. We have construed this provision to be in the

nature of a penalty imposed upon a landlord for the landlord's retaliatory conduct in violation of the statute. Sherryland v. Snuffer, 150 N.H. 262, 266 (2003). RSA 540:13-d provides an additional defense for a residential tenant to a possessory action for nonpayment of rent if the premises "are in substantial violation of the standards of fitness for health and safety," and if the violation "materially affects the habitability of said premises." RSA 540:13-d, I.

In this case, the tenants' counterclaims brought under RSA chapter 540-A were not defenses to possession that were "recognized in RSA chapter 540 itself." Matte, 152 N.H. at 218. Rather, they were independent claims for damages that would offset any unpaid rent owed to the landlord. Cf. Liam Hooksett, LLC., 157 N.H. at 629-30 (ruling that, because RSA 540:13, III expressly allows a tenant to raise any claim or counterclaim that offsets or reduces the amount owed to the landlord, the trial court erred by not allowing tenants to assert counterclaims under RSA chapter 540-A in response to the landlord's claim for unpaid rent). Because the landlord did not assert a claim for unpaid rent under RSA 540:13, III, therefore, the trial court necessarily erred by not dismissing such counterclaims without prejudice. Matte, 152 N.H. at 218. Accordingly, we vacate the trial court's awards of $1,000 and attorney's fees pursuant to RSA 540-A:4, IX(a), and need not address the tenants' arguments that the trial court erred by not awarding judgment in their favor on certain other counterclaims brought under RSA chapter 540-A.

In contrast to the tenants' RSA chapter 540-A counterclaims, retaliatory eviction, as noted above, is a defense "recognized in RSA chapter 540 itself." Id. Indeed, we note that the landlord appeared to concede at trial that the RSA 540:13-a claim was cognizable in this case. Accordingly, the tenants were entitled to raise the defense regardless of whether the landlord sought unpaid rent, and upon finding proof of the defense, the trial court had discretion to award up to three months' rent. See RSA 540:14, II.

To the extent the landlord is arguing that the $1,500 limitation on "[a]ny decision rendered by the court related to a money judgment" in RSA 540:13, III limited the retaliatory eviction award, we construe this language within the overall context of the statute. Consistent with the legislative purpose of simplifying and facilitating the expeditious recovery of possession, Matte, 152 N.H. at 217-18, RSA 540:13, III limits the right of tenants to assert counterclaims offsetting the amount owed only to those cases in which the landlord affirmatively seeks unpaid rent, and then further limits the amount of any "money judgment" the court may render in such cases to $1,500. Indeed, allowing a party to assert a claim seeking more than $1,500 might trigger the opposing party's right to a jury trial and removal of the matter to superior court, thereby undermining the purpose of RSA chapter 540. See N.H. CONST. pt. I, art. 20; RSA 502-A:14, III(b), :15 (2010 & Supp. 2020) (authorizing removal of district court civil cases to superior court if claim or counterclaim arising out of same transaction exceeds $1,500). Unlike a defense, claim, or

6

counterclaim that offsets the amount owed under RSA 540:13, III, the defense of retaliation may be raised by a residential tenant in "any possessory action" (unless the tenant owes the landlord the equivalent of one week's rent or more), RSA 540:13-a, and the tenant is not required to plead or prove any amount of damages, see Sherryland, 150 N.H. at 266. Nor does the express language of RSA 540:14, II obligate the trial court to impose a penalty if it finds retaliation. Read within the context of the overall statutory scheme, we conclude that the legislature did not intend the $1,500 limitation on money judgments in RSA 540:13, III, which applies to claims for unpaid rent and to defenses, claims, and counterclaims that offset or reduce unpaid rent claims, to limit the penalty that the trial court has discretion to award under RSA 540:14, II.

We next address whether the trial court erred by finding that the eviction was in retaliation for the tenants' good faith report, and reasonable belief, that the water odor violated RSA chapter 540-A. To the extent that the landlord argues that the trial court violated the parol evidence rule by considering evidence of an agreement to deduct $620 from the December 2018 rent as reimbursement for the landlord's propane and electricity usage, and that, therefore, the trial court erred by not finding that the tenants owed more than one week's rent so as to preclude a retaliatory eviction defense,[3] see RSA 540:13-a, we note that the terms and conditions of any contract may be waived, and that a party's waiver may be implied by the party's conduct. See Prime Financial Group v. Masters, 141 N.H. 33, 37-38 (1996); Packer v. Burditt, 104 N.H. 248, 249 (1962).

The evidence reasonably supports the trial court's findings that the landlord acquiesced or agreed to a deduction of $620 from the December 2018 rent in order to reimburse the tenants for his use of propane and electricity, and that the tenants, therefore, did not fail to pay their rent. Accordingly, the trial court did not err by finding that the defendants were not in arrears on their rent so as to exclude their retaliatory eviction claim. The evidence likewise reasonably supports the trial court's findings that the landlord brought the eviction in retaliation for the tenants' reporting of the water odor, and that the tenants, in good faith, reasonably believed that the issue violated RSA chapter 540-A. Under these circumstances, we cannot conclude that the award of three months' rent under RSA 540:14, II was unsupported by the evidence or erroneous as a matter of law. Pelkey, 157 N.H. at 92.

We next address whether the trial court erred by finding that the water odor violated the implied warranty of habitability. We note that, although the

---

[3] The tenants assert, and the landlord does not dispute, that they vacated the premises just prior to the expiration of the lease. Thus, we agree with the tenants that the appeal is moot to the extent the landlord is attempting to challenge the dismissal of the possessory action on the basis that the trial court erred by finding that he acquiesced to the deduction of $620. The appeal is not moot, however, to the extent he is appealing this finding within the context of challenging the retaliatory eviction award.

tenants pleaded this claim under the common law theory, see Kline v. Burns, 111 N.H. 87, 92-93 (1971), the trial court premised its award of $608 upon the statutory defense to violations of the standards of fitness for health and safety codified in RSA 540:13-d. Even assuming, without deciding, that the trial court could properly have granted relief to the tenants in this case under RSA 540:13-d, the evidence does not support the trial court's award. In order to entitle a tenant to relief under RSA 540:13-d, the premises must be "in substantial violation of the standards of fitness for health and safety," and the violation must "materially affect[] the habitability of said premises." RSA 540:13-d, I (emphasis added). To constitute a breach of the implied warranty of habitability, the violation must "render[] the premises unsafe or unsanitary, and thus unfit for living therein." Crowley v. Frazier, 147 N.H. 387, 391 (2001) (emphasis added); see also Kline, 111 N.H. at 93. In this case, the evidence establishes that the malodorous water "is not a health hazard. It is just unpleasant." Indeed, the trial court expressly found that the water "was not dangerous for human consumption." Under these circumstances, the trial court erred as a matter of law by awarding $608 under RSA 540:13-d.

In sum, we: (1) conclude that the trial court should have dismissed, without prejudice, the tenants' counterclaims for damages that were not defenses to possession recognized by RSA chapter 540 itself, including the counterclaims seeking damages under RSA chapter 540-A; (2) vacate the awards of $1,000 and attorney's fees pursuant to RSA 540-A:4, IX(a) and RSA 358-A:10, I; (3) affirm the award of three months' rent for retaliatory eviction pursuant to RSA 540:13-a, I, and RSA 540:14, II; and (4) reverse the award of $608 for breach of the warranty of habitability pursuant to RSA 540:13-d. We direct the trial court, on remand, to enter judgment in favor of the tenants in the amount of $4,560.

Affirmed in part; reversed in part; vacated in part; and remanded.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**